POWER & IRRIGATION CO. OF CLEAR LAKE v. CRAIG et al.

(Circuit Court of Appeals, Ninth Circuit. October 4, 1915.)

No. 2521.

Courts ⬅312—Jurisdiction—Federal Court.

Where complainant's assignors were not entitled to sue in federal court, complainant cannot, its bill being based on defendants' fraud, committed to defeat rights growing out of contracts assigned to complainant, sue in federal court, for the suit, being one by an assignee of choses in action, is governed by the rule that in such case the assignee cannot sue in the federal courts where the assignor could not.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 865–875; Dec. Dig. ⬅312.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Maurice T. Dooling, Judge.

Bill by the Power & Irrigation Company of Clear Lake, a corporation, against Joseph Craig and others. From a judgment dismissing the suit, complainant appeals. Affirmed.

This is an appeal from a judgment dismissing the suit because of that provision of the federal statutes prohibiting the District Court from taking cognizance of any suit to recover upon any chose in action in favor of an assignee unless such suit might have been prosecuted in such court to recover upon such chose in action if no assignment had been made.

The bill in the case is necessarily very long. In substance, it is alleged: That in the county of Lake, state of California, there is situated an extensive lake known as Clear Lake, the outlet of which is a stream known as Cache creek, which said stream flows in a general southerly and easterly direction through the counties of Lake, Colusa, and Yolo, finally emptying the waters into the Sacramento river. That in the winter season, and particularly in times of flood and seasonal rainfall, the lake rises to a height of more than 10 feet above low-water mark, as said low-water mark is established by the Geological Survey of the United States government. That the difference in the quantity of the water in the lake between low and high water mark is 22,446,000,000 cubic feet. That during the season of high water vast quantities from the lake are discharged through Cache creek into the said Sacramento river, where they are lost and wasted. That lying within the counties of Yolo, Colusa, and Solano are about 200,000 acres of land, which are arid and in need of irrigation, the value of which will be largely increased if water for irrigation purposes is supplied to them. That if the water thus discharged through Cache creek can be impounded in the lake by raising it a height of 10 feet above the established low-water mark, all of the said area can be irrigated therewith by and through a system of canals leading from a proper and convenient point on the creek. That the said lake is situate at a mean elevation of 1,325 feet above the level of the sea, and that its waters, if so stored and conserved, will not only be available for irrigation as aforesaid, but will also be available for electrical power, without the use for the one purpose in any manner conflicting or interfering with the use for the other purpose, and that between 40,000 and 45,000 electrical horse power can be produced during the entire year by such use of said waters, and a much greater amount can be produced thereby during the period of seasonal rainfall.

That in the year 1906 three corporations were organized for the purpose of acquiring and utilizing the aforesaid lake, creek, and waters for the purposes aforesaid. That one of said corporations was called Central Counties Land Company; another, California Industrial Company; and the third, Central California Power Company—all of which it was intended should work together harmoniously. That it was intended that the Central Counties Land Company should acquire and own all of the land fronting upon the said lake above the aforesaid ten foot level; that the California Industrial Company should own the riparian rights in said lake, and the fee simple or overflowage rights to all of the lands around the borders of the lake below the aforesaid ten foot level; that the California Industrial Company should erect a dam at or near the mouth or outlet of the lake and should sell and dispose of the water to be conserved and impounded therein, for power, irrigation, domestic, and other public uses and purposes. That it was intended that the Central California Power Company should acquire from the California Industrial Company the right to use the said waters for the generation of electricity and electrical power, and, to that end, that it should build all necessary ditches, flumes, tunnels, canals, and power houses, and should install such hydroelectrical machinery and such transmission lines as would properly apply the electrical energy so to be used, to public uses.

That for a number of years prior to the organization of the said three corporations last above named, the defendant Yolo County Consolidated Water Company had diverted the natural flow of said Cache creek, during the ir-

rigating season, for the purpose of irrigating lands in Yolo county, and had irrigated therewith in an inefficient and unsatisfactory manner from 5,000 to 10,000 acres of land, and had built about 50 miles of canals, and that divers farmers or farming neighborhoods had built laterals leading to said canals to the extent of about 200 miles in length. That the quantity of water supplied during the irrigating season through such canals and laterals varied greatly at different times, but at no time exceeded, or ever has exceeded, 100 second feet, and frequently no water whatever reached said laterals.

That on the 19th day of January, 1907, the defendant Capay Ditch Company, a corporation, owned 8,789 shares of the capital stock of the defendant Yolo County Consolidated Water Company out of a total of 9;924 shares, or thereabouts, which had been issued by the said defendant Yolo County Consolidated Water Company, and the balance of the said shares issued, save 60 or thereabouts, were owned in divers proportions by the Bank of Woodland, a corporation, Stephens Agricultural & Live Stock Company, a corporation, Kate S. Craig, J. L. Stephens, L. D. Stephens, J. J. Stephens, P. N. Ashley, N. A. Hawkins, and the defendant Joseph Craig.

That the said corporations Central Counties Land Company, California Industrial Company, and Central California Power Company proceeded to carry out the plans above stated, and, to that end, between the fall of 1906 and the 1st day of June, 1911, purchased lands and overflowage rights in and about Clear Lake, caused water locations to be made, pipe, tunnel, ditch, canal, and conduit lines to be surveyed, and did and performed other acts and things in and about the said enterprise, at a total cost of about $1,000,000.

That on said 19th day of January, 1907, one E. P. Vandercook made and entered into an agreement in writing with the said defendants Capay Ditch Company and Joseph Craig, and with the other above-named owners of the capital stock of said defendant Yolo County Consolidated Water Company, which said agreement was and is in the words and figures following, to wit:

"This agreement, made and entered into this 19th day of January, 1907, by and between E. P. Vandercook, the party of the first part, and the Capay Ditch Company, a corporation, the Stephens Agricultural & Live Stock Company, a corporation, the Bank of Woodland, a corporation, J. Craig, Kate S. Craig, J. L. Stephens, L. D. Stephens, J. J. Stephens, P. N. Ashley, and N. A. Hawkins, the parties of the second part, witnesseth:

"That the party of the first part agrees to buy, and the parties of the second part agree to sell all of the capital stock of the Yolo County Consolidated Water Company owned by the parties of the second part and being in the aggregate more than seventy-five per cent. of the whole of said capital stock; the number of shares owned by each of the parties of the second part being set down opposite the signatures of the parties hereto.

"And the price therefor shall be the sum of forty-five dollars per share, payable as follows, to wit, the sum of fifty-one thousand two hundred and fifty dollars already paid thereon, receipt of which is hereby acknowledged and the balance in the manner and time as follows, to wit, the sum of forty thousand dollars to be paid in the stock of the Central Counties Land Company, a corporation, taken at seventy-five per cent. of its face or par value, to be issued and delivered upon the signing of this agreement and with the guarantees accompanying said stock; and the balance in cash and bonds as follows, to wit: The sum of three dollars and thirty-three cents per share in gold coin on the 15th day of January, 1908, and the sum of three dollars and thirty-three cents per share in gold coin on the 15th day of July, 1908, and the sum of three dollars and thirty-four cents per share in gold coin on the 15th day of January, 1909, and the balance in the bonds of Central California Power Company, a California corporation, taken at ninety per cent. of their par value, said bonds to be issued, deposited and delivered as hereinafter stated. The amount of said bonds will be two hundred fifty-eight thousand seven hundred and fifty ($258,750) dollars, provided the whole amount of the capital stock of the Yolo County Consolidated Water Company is sold and delivered under the terms of this agreement and proportionately less if less than the whole of said capital stock be so sold and delivered.

"It is agreed and understood that any of said stock not in escrow with Cali-

fornia Safe Deposit & Trust Company, a California corporation, and held by the parties of the second part, shall be properly indorsed and placed with the said California Safe Deposit & Trust Company, and all the stock of the Yolo County Consolidated Water Company hereby sold and so placed in escrow shall remain in escrow with the banking department of said California Safe Deposit & Trust Company, and be delivered according to the terms of this agreement.

"It is further agreed and understood that the bonds of said Central California Power Company herein described as a part of the consideration of said sale, shall also be placed in escrow with said California Safe Deposit & Trust Company, as soon as the same shall be issued, to be held and delivered according to the terms of this agreement.

"It is understood that the party of the first part will purchase and pay for all other capital stock of the Yolo County Consolidated Water Company which may be offered to him by the other stockholders thereof upon the same terms and at the same price at which the stock of the parties of the second part is by this agreement sold to the party of the first part.

"It is further understood and agreed that all the lands and property purchased from the Spring Valley Waterworks and its associate companies and other lands owned by the Yolo County Consolidated Water Company bordering on Clear Lake and Cache creek in Lake county shall be transferred to the Central Counties Land Company, reserving to the Yolo County Consolidated Water Company the right to overflow all that portion of said lands lying below a lake level of seven feet and four inches above the government low-water mark of said lake, such conveyance to be delivered at the time the stock of said Central Counties Land Company is issued and delivered under the terms hereof.

"The stock of the Yolo County Consolidated Water Company and the bonds of the Central California Power Company to be issued and placed in escrow under the terms of this agreement shall remain with California Safe Deposit & Trust Company until all cash payments herein provided to be paid are fully made and until the parties of the second part have-been furnished with a copy of the proceedings of Central California Power Copmany, certified by its secretary to be correct, showing that the bonds of said company, and until said bonds shall have a market value of ninety per cent. of their par value; whereupon the said California Safe Deposit & Trust Company shall deliver the stock of the Yolo County Consolidated Water Company to the party of the first part and the said bonds to the parties of the second part; provided, however, that at any time after said bonds have been issued and placed in escrow any one or number or all of the parties of the second part at his or their option shall be entitled to receive his or their proportion of said bonds, together with the additional bonds at the price herein named for his part of any cash payments remaining unpaid, upon his delivering, or causing to be delivered, his or their said stock to the party of the first part.

"It is further understood and agreed that any and all moneys which may be expended by Yolo County Consolidated Water Company, with the consent of the party of the first part, for permanent betterments or improvements or for the acquisition of any additional property required for the water system and storage of water, pending this agreement, shall be repaid to said company by the party of the first part with interest thereon at the rate of five per cent. per annum. The party of the first part may pay all persons from whom contracts or options are held by the corporation, or may procure extensions of the options to such time as will protect the rights of said corporation to the same extent that they are now protected and with the same latitude of time now held by said corporation; all such payments and extensions shall be made in the name of and for the use of the Yolo County Consolidated Water Company, excepting as hereinafter provided.

"The party of the first part further agrees and covenants that he will procure at his own expense from the Yolo County Consolidated Water Company a grant of permanent water rights upon and for seven thousand acres of land belonging to the parties of the second part, it being expressly provided that the water to be used under said water rights is to be supplied

and paid for on the same terms and conditions that water is sold to other persons from the ditches of said corporation.

"The parties of the second part hereby undertake and agree that the shares of the capital stock so placed in escrow and sold to the party of the first part shall not be subject to any indebtedness of the said Yolo County Consolidated Water Company, or to any lien or liability and that the said Yolo County Consolidated Water Company shall not be indebted in any sum whatever when said stock shall be finally delivered as herein provided for excepting only the bonded debt of $225,000, of said corporation now outstanding which together with the interest hereafter to become due thereon shall remain a liability of said Yolo County Consolidated Water Company.

"It is further understood and agreed that the Yolo County Consolidated Water Company is entitled to receive rights of way across all property now owned by the stockholders of said corporation, who are parties to this agreement, or by the Bank of Woodland or any other corporation or company controlled by the stockholders of said Yolo County Consolidated Water Company; said rights of way to cover rights for ditches, flumes, dams, power lines, pole lines and rights to flood land bordering on the shores of Clear Lake and any other purpose which the party of the first part and his associates may require to use in connection with the business of supplying water for irrigation and domestic purposes and the development and transmission of power.

"Said parties of the second part, in consideration of the execution of this agreement by the party of the first part, hereby grant unto said Yolo County Consolidated Water Company, and to its successors or assigns, forever, rights of way over all of their, or any of their lands for such ditches, flumes, dams, power lines, pole lines, and for such other purposes and uses as may be necessary or useful to said Yolo County Consolidated Water Company in the discharge of its corporate functions and the development of its business of supplying water for irrigating and domestic purposes and the development and transmission of power; and said parties of the second part also grant unto Yolo County Consolidated Water Company, and to its successors and assigns forever, the right to overflow all of their or any of their lands bordering on Clear Lake to the extent caused by raising the level of Clear Lake a perpendicular distance of seven (7) feet four (4) inches above the low-water mark established by the United States government; and said parties of the second part covenant and agree that they and each of them will, for the purpose of fully carrying into effect the grants made by the terms of this agreement, make, execute and deliver to said Yolo County Consolidated Water Company, such other or further assurances as the said party of the first part may be advised by persons learned in the law are necessary to fully vest in said Yolo County Consolidated Water Company the rights herein granted.

"It is further understood and agreed that should the party of the first part fail to make any of the additional payments of principal or interest herein provided, at the time the same becomes due, or fail to perform his part of this agreement, then in that event the undersigned party of the first part shall lose all rights to purchase said property and all moneys paid thereon shall be retained as a consideration for the execution of this agreement and the party of the first part shall have no right to recover any portion of said payments; and said parties of the second part in that event shall have, and are hereby granted the right to purchase for the sum of three hundred and fifty thousand dollars the right to overflow all the lands bordering on Clear Lake to the extent caused by the raising of the level of Clear Lake a perpendicular distance of seven (7) feet four (4) inches above the low-water mark established by the United States, whether said right shall be in the name of the party of the first part, or any other associated persons, corporation or company; and, in said event of such failure, said parties of the second part shall have and are hereby granted the right to purchase at their reasonable market value any land needed for the purpose of erecting dams or other works necessary to raise the level of Clear Lake a perpendicular distance of seven (7) feet four (4) inches above the low-water mark established by the United States.

"It is understood and agreed that the said Yolo County Consolidated Water Company owns the ditches, dams, flumes, rights of way and the property now being used by it and in the event that legal title to any of said property is not vested in said corporation that the same shall be transferred to said corporation within one year from the date hereof.

"It is further understood and agreed that the Yolo County Consolidated Water Company shall be entitled to receive and shall receive from the stockholders of said corporation and from any corporation controlled by said stockholders all riparian rights for lands bordering on Cache creek except the right to take water from said Cache creek for live stock and domestic purposes.

"It is further understood and agreed that the party of the first part will pay interest on all the outstanding bonds of the Yolo County Consolidated Water Company as the same shall hereafter become due and that all deferred payments on the purchase price of said stock of the Yolo County Consolidated Water Company hereby purchased shall bear interest at the rate of five per cent. per annum payable semiannually from date hereof until paid; the payment of the amount to be paid in bonds of Central California Power Company to be reckoned or computed as made at the date of the acceptance of said bonds and their delivery to the parties of the second part; and all net income of the Yolo County Consolidated Water Company arising from irrigation or otherwise shall be applied as a credit on said interest.

"In witness whereof said parties have executed this agreement the day and year first above written.

'[Signed]                 E. P. Vandercook.
              "Capay Ditch Company—8789 shares.
                  "By J. Craig, President,
                  "and L. D. Stephens, Secretary.
              "Stephens Agricultural & Live Stock Company,
                       "400 shares.
                  "By J. L. Stephens, President,
                  "and Nannie Stephens, Tem. Secretary.
              "Bank of Woodland—400 shares,
                  "By L. D. Stephens, President,
                  "and J. Craig, Secretary.
              "J. L. Stephens.
              "N. A. Hawkins—135 shares.
              "J. J. Stephens.
              "L. D. Stephens—18 shares.
              "P. N. Ashley—100 shares.
              "Kate S. Craig."

The bill further alleges that Vandercook, at the time of entering into the contract just set out, was acting in co-operation with the Central Counties Land Company, California Industrial Company, and Central California Power Company; that pursuant to that contract Vandercook, on January 19, 1907, paid to the parties of the second part thereto $91,250, $51,250 of which was paid in cash, and $40,000 of which was paid by delivery to them of 533 shares of the capital stock of the Central Counties Land Company, which shares the parties of the second part to the contract accepted at the rate of $75 a share, and also the sum of $25 in cash, which stock and cash the said parties of the second part to said contract of January 19, 1907, received from Vandercook in lieu of and as a substitute for cash in the sum of $40,000; that Vandercook duly delivered to the California Safe Deposit & Trust Company of San Francisco bonds of the Central California Power Company in the amount of $258,750 as provided for in the contract of January 19, 1907, and that the parties of the second part to that contract, and in pursuance thereof, duly deposited, on the 31st day of January, 1907, with the California Safe Deposit & Trust Company, certificates representing 9,424 shares of the capital stock of the Yolo County Consolidated Water Company, and at divers times thereafter deposited with the California Safe Deposit & Trust Company certificates representing 440 additional shares of

the capital stock of the Yolo County Consolidated Water Company, making a total of 9,864 shares of its stock so deposited in escrow with the Safe Deposit & Trust Company mentioned; that on the 29th of March, 1907, Vandercook paid to the parties of the second part to said contract of January 19, 1907, $8,320.75, being the amount of interest then due on the purchase price of said stock at the rate of 5 per cent. per annum, pursuant to the terms of said contract of January 19, 1907; and that thereafter, to wit, November 18, 1907, Vandercook paid to the parties of the second part to the contract of January 19, 1907, the sum of $19,570.75, being all interest then due on the bonds and on the purchase price of said stock, and all interest to become due under the contract to and including April 1, 1908; that as was contemplated and provided for in the contract of January 19, 1907, the defendant Yolo County Consolidated Water Company paid out and expended for the acquisition of additional property for a water system and for the storage of water, at various specified times, $86,060.50 in the aggregate, all of which sums, together with interest due thereon, were, pursuant to the terms of the contract of January 19, 1907, repaid to the defendant Yolo County Consolidated Water Company by Vandercook, at certain specified dates and in certain specified sums; that the parties of the second part to the contract of January 19, 1907, for a good and valuable consideration, agreed with Vandercook to waive and did waive any and all rights conferred upon them, or any or either of them, in and by that certain paragraph of said contract of January 19, 1907, providing that "should the party of the first part (said Vandercook) fail to make any of the additional payments of principal or interest herein provided, at the time the same becomes due, or fail to perform his part of this agreement, then in that event the undersigned party of the first part shall lose all rights to purchase said property and all moneys paid thereon shall be retained as a consideration for the execution of this agreement, and the party of the first part shall have no right to recover any portion of said payments."

The bill further alleges that the authorized issue of the capital stock of the defendant Yolo County Consolidated Water Company was 10,000 shares, and that less than the whole amount of such shares, to wit, 9,864 shares, were sold and delivered in escrow as aforesaid; that the said 533 shares of the capital stock of the Central Counties Land Company were, under the terms of the contract of January 19, 1907, thereafter issued and delivered to the parties of the second part thereto; and that contemporaneously with such delivery they executed to Vandercook an instrument purporting, and supposed by him and the Central Counties Land Company, to convey to that company all of the lands referred to in the contract of January 19, 1907, as having been purchased from the Spring Valley Water Company and its associate companies, and also those lands owned by the Yolo County Consolidated Water Company bordering on Clear Lake and Cache creek, but which instrument did not in fact embrace such lands, and which fact was well known to the parties of the second part to the contract of January 19, 1907; that it was the true intent and meaning of the last-mentioned contract that said Spring Valley property should be conveyed to the Central Counties Land Company free and clear of any and all liens and incumbrances, but that, in fact, the said lands had, subsequent to their conveyance to the parties of the second part to the contract of January 19, 1907, been incumbered by a deed of trust or mortgage, given to secure a bonded indebtedness of $225,000, the lien of which has never been removed; that the legal title to the ditches, dams, flumes, rights of way, and property above referred to was not, at the date of the contract of January 19, 1907, vested in the defendant Yolo County Consolidated Water Company, and the same was not transferred to that company within one year from the date of that contract, as therein required; that the defendant Yolo County Consolidated Water Company did not receive from its stockholders, and from the various corporations controlled by them, as provided for in the said contract of January 19, 1907, all riparian rights (except the right to take water for live stock or domestic purposes for lands bordering on Cache creek) or any riparian rights whatever; that Vandercook did not make to the parties of the second part to the contract of January 19, 1907, the additional payment of $3.33 a share, due on the 15th day of January, 1908, as required by

the contract of January 19, 1907, nor did he make the additional payment of $3.33 per share, due July 15, 1908, as thereby required, nor did he make the additional payment of $3.34 per share, due January 19, 1909, as thereby required, but by the agreement of all the parties to the said contract of January 19, 1907, the provision thereof as to the times for making the said payments was waived, and the time for the making thereof was duly and regularly extended from time to time, and the time for making the said payments was open on the 24th day of March, 1912, when the said agreement was rescinded, as subsequently alleged in the bill; that on the 3d day of March, 1908, the defendants Craig and Capay Ditch Company were owners and holders of the capital stock of the said Central Counties Land Company, and on that day entered into a certain agreement for the merger of all of the interests of Vandercook under the contract of January 19, 1907, and all of the capital stock of the said Central Counties Land Company, the California Industrial Company, and the Central California Power Company, which said merger agreement was duly signed by Vandercook and by the defendants Craig and Capay Ditch Company, and by each and all of the other then stockholders of the said Central Counties Land Company, the California Industrial Company, and the Central California Power Company, and which said merger agreement is in the words and figures following, to wit:

"This agreement, made and entered into this third day of March, 1908, between the undersigned, shareholders of the Central Counties Land Company, the Central California Power Company, the California Industrial Company, and E. P. Vandercook, witnesseth:

"That whereas, the said undersigned stockholders are the owners respectively of the number of shares in the said respective corporations set opposite their signatures hereto and being all of the issued capital stock of said corporations.

"And whereas, the said Vandercook is the owner of an option to purchase all of the issued capital stock of the Yolo County Consolidated Water Company; and is the owner of all of the issued capital stock of the California Industrial Company;

"And whereas, the Clear Lake Power & Irrigation Company is desirous of acquiring the stock of said corporations and the said option.

"Now therefore, it is agreed as follows:

"(1) That all of the capital stock in the said corporations held by the signers of this agreement and being all of the issued stock of said corporations and the said option shall be transferred, assigned, set over, and exchanged to and with the said Clear Lake Power & Irrigation Company, in consideration of the issuance, as hereinafter provided for, of 49,999 shares of the capital stock of the said Clear Lake Power & Irrigation Company.

"(2) It is further agreed, that the said Vandercook shall receive 16,777 shares out of said 49,999 shares of the capital stock of the said Clear Lake Power & Irrigation Company, for and in consideration of one thousand shares of the capital stock of the Central Counties Land Company, represented by certificate numbers 41 and 102, and for and in consideration of all of the issued stock of the California Industrial Company, and for and in consideration of 7,867 shares of the capital stock of the Central California Power Company (which said option and stock shall be turned over, as aforesaid, to the said Clear Lake Power & Irrigation Company).

"The remaining 33,222 shares of the said 49,999 shares of the capital stock of the said Clear Lake Power & Irrigation Company shall be distributed among the parties hereto in proportion to the respective amounts actually contributed by them or their assignors or predecessors in interest to the assets or maintenance of said corporations, that is to say, for each $100 of value actually paid in or contributed, in money or land, by the parties hereto or by their assignors or predecessors in interest (exclusive of services rendered) to the assets or maintenances of said corporations or either of them there shall be transferred and delivered to such party nine and one-half shares of the capital stock of the said Clear Lake Power & Irrigation Company. The amount so paid or contributed in money or land by the parties hereto or by the assignors or predecessors in interest is set forth opposite their respective

names and is hereby accepted by each of the signers hereto as a correct statement of the amount so paid or contributed.

"It is agreed that no fractions of shares of stock of the Clear Lake Power & Irrigation Company be issued but that the number of whole shares nearest the fractional number shall be issued.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

"Stockholders in the Central Counties Land Company.

| Signature of Stockholders. | Share Held. | Amt. Paid. | Shares in Clear Lake Power & Irrigation Co. |
|---|---|---|---|
| Geo. D. Gray | 200 | $15,200.00 | 1,444 |
| Home Realty Co | 24 | 1,824.00 | 173 |
| Anson S. Blake | 50 | 3,800.00 | 361 |
| E. P. Vandercook | 637 | 41,733.00 | 3,965 |
| E. P. Vandercook | 1,000 | Inc. above per agreement. | |
| E. P. Vandercook | 25 | 1,875.00 | 178 |
| E. P. Vandercook, Trustee, J. S. Herman, Trustee | 230 | 7,500.00 | 713 |
| Edward O. Allen | 1 | 1.00 | None. |
| Ramon Roca | 500 | 38,000.00 | 3,610 |
| Oscar Sutro | 6 | 375.00 | 36 |
| Jose Costa | 5 | 375.00 | 36 |
| Newman Kline | 50 | 5,000.00 | 475 |
| Jno. L. Clem, Jr | 15 | 1,140.00 | 107 |
| Hiram W. Johnson | 472 | 19,972.00 | 1,897 |
| Edward O. Allen, Trustee | 771 | 50,771.00 | 4,823 |
| A. F. Cornwall | 10 | 760.00 | 72 |
| Capay Ditch Co., By J. Craig, Pres. By L. D. Stephens, Sec. | | | |
| James Conning | 30 | 2,250.00 | 213 |
| A. S. D'Avila | 390 | 7,150.00 | 679 |
| Emily R. Newton | 580 | 30,580.00 | 2,905 |
| D. N. Duffy | 100 | 7,600.00 | 722 |
| W. D. Huntington | 36 | 2,700.00 | 256 |

California Industrial Company.

E. P. Vandercook .......................................................All issued stock.

Yolo County Consolidatel Water Company.

E. P. Vandercook ...........................$61,250.00          5,819

Stockholders in the Central California Power Company.

| Geo. D. Gray | 200 | Nothing | None |
| Home Realty Co | 25 | " | " |
| Anson S. Blake | 50 | " | " |
| E. P. Vandercook | 7,867 | Per agreement | |
| Edward O. Allen | 1 | Nothing | None |
| Ramon Roca | 500 | " | " |

"Issue for these holdings is covered by issue for holdings in Central Counties Land Co.

"Signed by all other stockholders."

The bill further alleges that the document referred to in the foregoing merger agreement as "an option to purchase" is the agreement of purchase and sale of January 19, 1907; that the Clear Lake Power & Irrigation Company referred to in the merger agreement was a corporation duly organized under the laws of California, having an authorized capital of $10,000,000, divided into 100,000 shares of the par value of $100 each; that after the execution of the said merger agreement, the board of directors of the said Clear Lake Power & Irrigation Company, at a regularly called meeting, duly

adopted a resolution reciting the said merger agreement and the provision thereof to the effect "that the owners of the issued stock in the said corporations, and the owner of certain rights and options, shall transfer and convey the same over to this corporation in consideration of the issuance of 49,999 shares of the capital stock of this corporation," and reciting the opinion of its board of directors that it was for the best interests of the corporation to issue the said stock "for the said consideration, and thereby unite the interests in certain lands about Clear Lake and certain water rights and power privileges, and certain irrigation interests," and resolving:

"That this corporation will, as soon as the said stock of the said corporations and the said rights referred to in said agreement shall be ready to be passed over to this corporation, issue 49,999 shares of its capital stock for and in consideration thereof; and the president and secretary of this corporation are hereby authorized, empowered, and directed, for and in the name of this corporation, and as and for its corporate act, to carry this resolution into effect and to issue in an appropriate manner for that purpose 49,999 shares of the capital stock of this corporation and to deliver the same to the respective parties entitled thereto, upon receiving the subscribed capital stock of the Central Counties Land Company, the Central California Power Company, and the California Industrial Company, and other rights and property referred to in the aforesaid agreement between the stockholders of the said corporations and the said E. P. Vandercook, dated the 3d day of March, 1908."

The bill further alleges that thereafter the said Clear Lake Power & Irrigation Company made out certificates of its shares of stock to the number and in the manner called for by the merger agreement, and at all times thenceforward held the same in readiness for delivery upon receiving all the shares of the capital stock referred to in that agreement; that the defendants Craig and Capay Ditch Company were the owners upon the books of the Central Counties Land Company of 634 shares of its capital stock; but that they, although parties to the merger agreement, refused, and at all times thenceforward failed, to turn in their said stock to the Clear Lake Power & Irrigation Company; that the latter company was unwilling to issue any of its capital stock unless each and all of the signers of the merger agreement should unite in turning in all of the said stock; that nevertheless, by the mutual consent and acquiescence of all of the parties to the merger agreement, the latter "was treated as an accomplished fact"; and that the parties thereto proceeded to transact business connected with the said enterprise in the name of the Clear Lake Power & Irrigation Company, although the principal part of the cost and expenses thereof was borne by the Central Counties Land Company.

The bill then alleges: That the properties in question are of great value, and proceeds to allege a fraudulent conspiracy between the defendants Craig, William A. Brady, Archibald S. White, C. L. Parmalee, George H. Hull, Jr., Roy M. Pike, and White & Co., setting forth the various steps alleged to have been taken by the alleged conspirators in carrying out the alleged fraudulent scheme, including the alleged breaking of the said Vandercook contract of January 19, 1907, and the alleged securing by the alleged conspirators "for the said Yolo Water & Power Company, and indirectly for themselves as stockholders and bondholders therein, all of the properties and assets of said Central Counties Land Company, California Industrial Company, and Central California Power Company, which were essential to the aforesaid enterprise," and "that the various acts and conduct aforesaid of the said defendants were planned, intended, and calculated to wreck and financially ruin and destroy, as aforesaid, the said Central Counties Land Company and its allied corporations, and to wreck and ruin and destroy the said merger. That said plans have to that extent succeeded. That as a result of the acts and conduct of the said defendants, as aforesaid, said Central Counties Land Company and said California Industrial Company and said Central California Power Company were unable to secure money or means with which to continue in active business, or to continue in existence as corporations. That for failure to pay the license taxes of said Central Counties Land Company for the year 1911 due to the state of California, the franchise of said corporation and its

right to do business as a corporation was forfeited on the 30th day of November, 1911. That on and after said 30th day of November, 1911, the directors of the said Central Counties Land Company, including the defendant Joseph Craig, became by operation of law trustees of said corporation, for the purpose of winding up its affairs, and said directors ever since have continued to be and still are trustees of the said corporation, although said defendant Craig has failed, refused, and neglected to participate in the winding up of the affairs of said corporation. That on the 9th day of April, 1913, the plaintiff corporation was organized, as aforesaid, under the laws of the state of Arizona. That the organization of said corporation was brought about at the instance of divers creditors of the said Central Counties Land Company. That the creditors of said last-named corporation were each and all persons who had been defrauded in and by the aforesaid scheme and conspiracy. That thereafter the claims and demands of all the creditors so far as known to plaintiff, against said Central Counties Land Company, amounting to $700,000 or thereabouts, were duly assigned, transferred, and set over unto this plaintiff, or agreed to be so assigned, transferred, and set over, and the claims of all the creditors of said California Industrial Company and of the said Central California Power Company were likewise transferred, assigned, and set over to this plaintiff, and thereupon there was issued to various creditors of the said corporations, in consideration thereof and exchange therefor, a total of 3,500 shares of the capital stock of this plaintiff, of the par value of $100 each. That thereafter the trustees of the said Central Counties Land Company, in partial satisfaction of the said creditors' claims, sold, assigned, transferred, and set over unto this plaintiff all of the assets and property, choses in action, rights and equities of every kind and character arising out of the transactions herein referred to, and belonging to, the said Central Counties Land Company, or vested in them as trustees, and thereupon said creditors' claims so assigned were, by agreement between plaintiff and said trustees, satisfied in an amount in excess of the value of the assets so received by this plaintiff from said trustees, and due and proper provision was made for paying to any creditors of said Central Counties Land Company who might thereafter be discovered, or who had not so assigned his claim to plaintiff, a just and true pro rata of his or their claim or claims, in the ratio of the total amount of such claims to the total value of all of the assets of said Central Counties Land Company, and said transaction was duly ratified and approved by former stockholders of said Central Counties Land Company owning and holding more than two-thirds of the capital stock of said defunct corporation; and thereafter the trustees of the said California Industrial Company and the trustees of the said Central California Power Company (the rights of each of said last-named corporations to do business having theretofore been forfeited for nonpayment of the state license tax), in consideration of the cancellation of all of the indebtedness of the said respective corporations, have sold, assigned, transferred, conveyed, set over, and delivered to plaintiff all of the assets, properties, claims, and equities of every kind and character belonging to the said two last-named defunct corporations, or belonging to or vested in them as trustees thereof. That the assets so received by plaintiff were of less value than the outstanding creditors' claims against said corporations, and that plaintiff's stockholders include substantially all of the creditors of said defunct corporation, who, as aforesaid, were defrauded by the said scheme and conspiracy. The plaintiff is now the owner and holder of all of the aforesaid properties, rights, choses in action, equities, and assets formerly owned by said defunct corporations and their trustees. That plaintiff is now the owner and holder of all of the choses in action, rights, and equities of the aforesaid Central Counties Land Company, California Industrial Company, and Central California Power Company, and of substantially all, if not all, of the creditors' claims against said defunct corporations, and of the claims of the trustees of said defunct corporations, including all choses in action, rights, and equities accrued or accruing to them, or to any or either of them, by reason of the aforesaid fraudulent acts and conduct of the said parties to the said fraudulent scheme and conspiracy, and of the defendant Yolo Water & Power Company, the agent and instrumentality of the said conspirators as aforesaid. That plaintiff has a capital

stock of $1,000,000, and that $350,000 of said capital stock is fully paid up and issued as hereinabove set forth. That divers secured creditors of said defunct Central Counties Land Company have, by agreement with certain stockholders, and for adequate and valuable consideration, assigned their mortgages to plaintiff, and the lands so acquired by plaintiff have been freed from large incumbrances and liens, and plaintiff now has assets of a value in excess of its issued capital stock, and is in a condition to proceed with the aforesaid enterprise."

The bill further alleges, among other things, that the complainant now owns or controls more than one-half of the frontage of Clear Lake, including the Spring Valley Ranch and dam site mentioned; that it owns and holds water appropriations to the amount of 500 second feet or upwards on the lake, made under the statutes of the state of California, which are first in time and first in right, and that it has followed up its appropriations by performing the required work; that under and by virtue of such appropriations it has the right to erect a dam upon its said lands at the mouth of Clear Lake, to divert the waters thereof, for the purpose of generating electricity and electrical power, and for purposes of irrigation; that it owns and holds more than 7,000 acres of land bordering upon or now overflowed by the lake; that it is not necessary to its undertaking for the complainant to acquire or own in fee simple the canal or ditch system and laterals now or formerly owned or controlled by the defendant Yolo County Consolidated Water Company, nor is it necessary that the complainant should have, nor does it by its bill seek, a return of the stock of the said Yolo County Consolidated Water Company. But it alleges that it is just and equitable that there be made in this suit "an equitable condemnation, whereunder plaintiff shall be permitted to have the use of said distributing system consisting of canals or ditches and laterals of said Yolo County Consolidated Water Company for the purpose of conveying the waters to be impounded in Clear Lake by it to the persons who and upon the lands which may have need of the same for irrigation; that in that behalf the complainant has the legal and equitable prior right to divert and store in Clear Lake, for the purpose of generating electricity and electrical power, the water flowing out of the lake through Cache creek at all seasons, including all surplus storm or flood water, and has the sole and prior right to secure a permit for and to erect a dam for said purpose at or near the outlet to the lake; that by reason of the matters and things alleged in the bill the complainant "also owns and holds the equitable title to the benefits, if any, of the appropriation and location for irrigation purposes which defendant Yolo Water & Power Company caused to be posted on said Spring Valley Ranch and recorded on May 29, 1912, as aforesaid"; that by reason of the matters and things alleged in the bill the complainant is in equity entitled to the beneficial enjoyment "of all of the aforesaid contracts so made as aforesaid with said land owners for the sale of water to the owners of the 50,000 acres of land accessible to the said canal system of defendant Yolo County Consolidated Water Company"; that defendants Yolo County Consolidated Water Company and Yolo Water & Power Company are entitled to the usual and normal flow of Cache creek at the times and seasons and to the extent that said waters were utilized prior to the incorporation of said defendant Yolo Water & Power Company, but to no other or greater extent, and that the defendant Yolo Water & Power Company claims to own all of the stock of the Yolo County Consolidated Water Company; that said Yolo County Consolidated Water Company is the owner of those certain canals or ditches, together with their laterals, situated in the county of Yolo, a particular description of which is given in the bill. And it is alleged that the purpose for which the said ditches were constructed was the diversion of the natural flow of Cache creek during the irrigating season beginning about May 1st and ending ordinarily about October 1st; that the said canals or ditches have a combined intake capacity of about 500 second feet; that the defendant Yolo County Consolidated Water Company and the defendant Yolo Water & Power Company have not, nor has either of them, ever utilized the said ditches to their full capacity; that the natural flow of Cache creek is comparatively small during the summer months, and rapidly diminishes towards the end of the

summer season, and during a portion of the irrigating season there is at times no natural flow whatever in the said stream or in the said ditches; that neither the defendant Yolo County Consolidated Water Company nor the defendant Yolo Water & Power Company has the right to store or divert the surplus of storm waters from the said creek for any purpose; that the waters to which the defendants Yolo County Consolidated Water Company and the Yolo Water & Power Company are entitled are insufficient for the irrigation of all of the lands susceptible of being irrigated by means of the said ditches and canals; that the purpose and intent of the complainant is to reach such lands with suitable canals, ditches, and laterals, and to furnish enough additional water to supply any deficiency of water, and that the said purposes of complainant "can be accomplished by and through a common use by plaintiff and the said defendants of the said canals or ditches and laterals"; that the use in common with said defendants of said ditches, canals, and laterals will in no way destroy or diminish the defendants' use thereof, and that the complainant is able and willing to pay its proper proportion of the unkeep and a proper rental to the said defendants for the said common use of their canal system, and to pay to them a just amount for the taking of an easement, servitude, or right to have and enjoy such use; that if such common use is not permitted it will be necessary for the complainant to duplicate the said canal system; that the complainant is informed and believes that the defendants White, Parmalee, Hull, Jr., Pike, Phillips, Brady, and White & Co., are large stock and bond holders in the defendant Yolo Water & Power Company, either in their own names or in the names of other persons, all of which they received as commissions for and on account of their participation in the alleged transactions; that over $9,200,000 par value of the said bonds of the defendant Yolo Water & Power Company are still unissued and are in the control of the defendant Oakland Bank of Savings; that of the $800,000 par value or thereabouts which have been issued a large number are in the possession and control of the defendants Craig, Parmalee, White, Brady, Hull, Jr., Phillips, and White & Co., they having received the same as and for their commission and profit from the alleged fraudulent scheme and conspiracy; that the defendants Yolo Water & Power Company, Capay Ditch Company, and Yolo County Consolidated Water Company, have acquired certain lands and overflowage rights in lands bordering upon Clear Lake, and have also acquired certain riparian and other rights in and to lands bordering upon Cache creek, all of which lands and rights are essential to plaintiff's alleged enterprise, and all of which lands "the said defendants, by reason of the matters and things herein set forth, are chargeable with as trustees of this plaintiff"; that the complainant is able and willing and offers to submit to such equitable terms, orders, and decrees in the premises as the court shall deem proper as a condition to granting the relief prayed for.

Charles S. Wheeler and John F. Bowie, both of San Francisco, Cal., for appellant.

S. C. Denson, John S. Partridge, Alan C. Van Fleet, A. E. Shaw, Bert Schlesinger, Denson, Cooley & Denson, Mastick & Partridge, and Theodore A. Bell, all of San Francisco, Cal., and McKee & Tasheira, of Oakland, Cal., for appellees.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge (after stating the facts as above). We think, as did the court below, that the basis of the suit are the contracts set out in the bill, and that as the complainant's assignors could not, for that reason, bring it in the federal court, neither could the complainant, because of the provisions of the statute above referred to.

The Central Counties Land Company, the California Industrial Com-

pany, and the Central California Power Company, referred to in the briefs as the "Allied Corporations," through whom the complainant claims were, according to the averments of the bill, acting in co-operation with Vandercook, who held a contract with certain of the defendants to the suit for the purchase of the stock of the Yolo County Consolidated Water Company—which is the contract of January 19, 1907—after which, according to the bill, came the incorporation of the Clear Lake Power & Irrigation Company and the merger agreement. It was to defeat the rights growing out of the contracts mentioned, in behalf of Vandercook and the Allied Corporations and those holding under them, that the alleged wrongs and frauds on the part of the defendants are alleged to have been done and committed. We do not see how it would be possible to prove the case made by the bill without inquiring into the contracts, their subject-matter, and into all of the various acts of the respective parties thereto done under, in connection with, or in respect to them. In short, we regard it as clear that the contracts, which are indiputably choses in action, constitute the real foundation of the suit. We must therefore affirm the judgment.

Judgment affirmed.